IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KENNETH BURNETT           :       CIVIL ACTION
                            :
     v.                  :
                            :
DONALD T. VAUGHN, et al.      :     No. 02-3823

## REPORT AND RECOMMENDATION

PETER B. SCUDERI
UNITED STATES MAGISTRATE JUDGE          February   , 2003

Before the court is a <u>pro se</u> petition for writ of habeas corpus filed pursuant to 28

U.S.C. § 2254 by Kenneth Burnett ("Burnett"), an individual currently incarcerated at the

Graterford State Correctional Institution.  For the reasons that follow, I recommend that

the petition be denied.

## FACTS AND PROCEDURAL HISTORY:

The state court summarized the facts underlying this case as follows:

On July 29, 1995, [Burnett] was at home . . . with his 76 year old father, the
deceased, Alistar Burnett.  Some time between 1:00 and 2:00 p.m., in the
afternoon, [Burnett] decided to cut some frozen vegetables with what he
described as a "chopper" when his father came into the kitchen.  During the
course of an argument between [Burnett] and his father, [Burnett] brutally
beat, cut, slashed and chopped his unarmed father approximately 25 times
in the head, spine, abdomen and back.

<u>Commonwealth v. Burnett</u>, No. 622/1995 at 2-3 (Phila. Ct. Comm. Pl., Feb. 19, 1997)

(citations to Record omitted), attached to Resp't Ans. as Ex. "B."  After confessing his

crime to the police, Burnett was tried before a jury and the Honorable James J. Fitzgerald,

Court of Common Pleas of Philadelphia County.  Prior to testimony, Judge Fitzgerald

heard and denied a pretrial motion to suppress Burnett's statement to police.  On July 23,

1996, Burnett was convicted of first degree murder and possession of an instrument of

crime.  Judge Fitzgerald sentenced Burnett to a mandatory term of life imprisonment for

his murder conviction, and to a concurrent term of two and one-half (2½) to five (5) years

of imprisonment for the weapons offense.

Burnett filed a direct appeal in the Pennsylvania Superior Court claiming:

> (1) the trial court erred in failing to grant Burnett's request for a mistrial based upon the prosecutor's comments in his closing argument to the jury, wherein he called Burnett a liar and wherein he commented upon Burnett's failure to call corroborating testimony from other family members regarding the existence of the familiarity of the relationships;
>
> (2) the trial court erred by allowing the jury to view inflammatory photographs, which photos were offered solely to inflame the passions of the jury;
>
> (3) the trial court erred in not granted Burnett's request to waive a jury trial and proceed to trial before a judge sitting without a jury; and
>
> (4) the trial court erred in not suppressing Burnett's written statement given to the police in that there was not a knowing, intelligent and voluntary waiver of his <u>Miranda</u> rights.

The Superior Court affirmed the judgment of sentence on September 16, 1997.

<u>Commonwealth v. Burnett</u>, 704 A.2d 160 (Pa. Super. 1997) (table); No. 2827 Phila. 1996

(Pa. Super. Sept. 16, 1997) (unpublished memorandum), attached to Resp't Ans. as Ex.

"A."  Burnett's petition for allowance of appeal in the Pennsylvania Supreme Court was

denied on February 23, 1998.  <u>Commonwealth v. Burnett</u>, 716 A.2d 1247 (Pa. 1997)

(table).

2

On October 6, 1998, Burnett filed a pro se petition for collateral relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541 et seq. Counsel appointed to represent Burnett in his PCRA matter subsequently filed a letter pursuant to Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. 1988), certifying that he had reviewed the entire record and concluded that there were no meritorious issues to advance before the PCRA court. On August 8, 2000, the PCRA court dismissed Burnett's petition as meritless and permitted counsel to withdraw.

Burnett filed an appeal in the Pennsylvania Superior Court claiming that trial counsel was ineffective for failing to present testimony about the violent nature of his father. The Superior Court affirmed the denial of PCRA relief on July 25, 2001. Commonwealth v. Burnett, 782 A.2d 1051 (Pa. Super. 2001) (table); No. 2641 EDA 2000 (Pa. Super. July 25, 2001) (unpublished memorandum), attached to Resp't Ans. as Ex. "C." The Pennsylvania Supreme Court denied allocatur on March 13, 2001. Commonwealth v. Burnett, 775 A.2d 802 (Pa. 2001).

On June 17, 2002, Burnett filed the instant petition for writ of habeas corpus claiming:

> (1) the trial court violated Burnett's due process and equal protection rights by failing to grant Burnett's request for a mistrial based upon the prosecutor's comments in his closing argument to the jury, wherein he called Burnett a liar and wherein he commented upon Burnett's failure to call corroborating testimony from other family members regarding the existence of the familiarity of the relationships;

(2) he was denied a fair trial when the trial court allowed the jury to view inflammatory photographs;

(3) the trial court violated Burnett's due process and equal protection rights by failing to grant Burnett's request to waive a jury trial and proceed to trial before a judge sitting without a jury;

(4) his conviction was obtained by use of a statement which was given without a knowing, intelligent and voluntary waiver of his <u>Miranda</u> rights because Burnett was hospitalized when the statement was given; and

(5) trial counsel was ineffective when he failed to call or investigate witnesses on Burnett's behalf.

Respondents have filed an answer asserting that Burnett is not entitled to habeas corpus relief because his claims are procedurally defaulted and/or meritless.

## <u>DISCUSSION</u>:

### 1. Exhaustion and Procedural Default

A federal court, absent unusual circumstances, should not entertain a petition for writ of habeas corpus unless the petitioner has first satisfied the exhaustion requirement of 28 U.S.C. § 2254.  <u>See</u> 28 U.S.C. § 2254(b).  A petitioner will not be deemed to have exhausted available state remedies if he had the right under the law of the state to raise, by any available procedure, the question presented.  <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838 (1999) ("we ask not only whether a prisoner has exhausted his state remedies, but also whether he has properly exhausted those remedies, i.e., whether he has fairly presented his claims to the state courts"); <u>Picard v. Connor</u>, 404 U.S. 270 (1971).  "The exhaustion requirement ensures that state courts have the first opportunity to review convictions and

4

preserves the role of state courts in protecting federally guaranteed rights." Lines v.

Larkins, 208 F.3d 153, 159 (3d Cir. 2000) (quoting Caswell v. Ryan, 953 F.2d 853, 856

(3d Cir. 1992)).  In order for a claim to be exhausted "[b]oth the legal theory and the facts

underpinning the federal claim must have been presented to the state courts . . . and the

same method of legal analysis must be available to the state court as will be employed by

the federal court." Evans v. Court of Common Pleas, Del. Co., Pa., 959 F.2d 1227, 1231

(3d Cir. 1992).  The habeas corpus petitioner has the burden of proving exhaustion of all

available state remedies.  Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) (citing

28 U.S.C.A. § 2254).

Although exhaustion may be excused, we may nonetheless be precluded from

reviewing the merits of claims deemed exhausted.  As the Third Circuit has held:

> claims deemed exhausted because of a state procedural bar are
> procedurally defaulted, and federal courts may not consider
> their merits unless the petitioner "establishes 'cause and prejudice'
> or a 'fundamental miscarriage of justice' to excuse the default."

Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000); see also Coleman v. Thompson, 501

U.S. 722, 731 (1991).  The "cause and prejudice" standard applies whether the default in

question occurred at trial, on appeal, or on state collateral attack.  Edwards v. Carpenter,

529 U.S. 446, 451 (2000).

The Supreme Court has delineated what constitutes "cause" for the procedural

default: the petitioner must "show that some objective factor external to the defense

impeded counsel's efforts to comply with the State's procedural rule." Werts, 228 F.3d at

5

192-93 (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)).  With regard to the prejudice

requirement, the habeas petitioner must prove "'not merely that the errors at . . . trial

created a possibility of prejudice, but that they worked to his actual and substantial

disadvantage, infecting his entire trial with error of constitutional dimensions.'" <u>Id.</u> at 193

(citing <u>Carrier</u>, 477 U.S. at 494).  This standard essentially requires the petitioner to show

he was denied "fundamental fairness" at trial.  <u>Id.</u>

      In the alternative, if the petitioner fails to demonstrate cause and prejudice for the

default, the federal court may also consider a defaulted claim if the petitioner can

demonstrate that failure to consider the claim will result in a fundamental miscarriage of

justice.  <u>Coleman</u>, 501 U.S. at 748.  In order to satisfy the fundamental miscarriage of

justice exception, the Supreme Court requires that the petitioner show that a

"constitutional violation has probably resulted in the conviction of one who is actually

innocent."  <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995) (citing <u>Carrier</u>, 477 U.S. at 496);

<u>see</u> <u>Glass v. Vaughn</u>, 65 F.3d 13, 16-17 (3d Cir. 1995), <u>cert.</u> <u>denied</u>, 516 U.S. 1151 (1996)

(assuming that the <u>Schlup</u> miscarriage of justice/actual innocence standard applied to

noncapital petitioner arguing eligibility for lesser degree of guilt).  To satisfy the "actual

innocence" standard, a petitioner must show that, in light of new evidence, it is more

likely than not that no reasonable juror would have found him guilty beyond a reasonable

doubt.  <u>Schlup</u>, 513 U.S. at 327; <u>see</u> <u>also</u> <u>Glass</u>, 65 F.3d at 16.

**A.     Claims Two (2) and Three (3): Fair Presentation to the State Court**

In claims two (2) and three (3), Burnett contends that the trial court violated his federal due process and equal protection rights by improperly admitting inflammatory photographs and denying his request for a non-jury trial.  Respondents argue that Burnett's second (2nd) and third (3rd) claims were presented to the state court solely as matters of state law.  As a result, they contend that the federal equivalent of these claims have not been fairly presented to the state courts and are unexhausted and procedurally defaulted.

We agree that claims two (2) and three (3) are procedurally defaulted because they were raised exclusively as a matter of state law to the state courts.  Duncan v. Henry, 513 U.S. 364 365 (1995) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.").  In order to satisfy the exhaustion requirement of 28 U.S.C. § 2254(d), a petitioner must "fairly present" federal claims to state courts before bringing them in federal court.  McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999) (citing Duncan, 513 U.S. 364; Picard v. Connor, 404 U.S. 270, 275 (1971); Lambert, 134 F.3d at 513).  To "fairly present" a claim to a federal habeas court, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.  McCandless, 172 F.3d at 261 (citing Anderson v. Harless, 459

U.S. 4, 6 (1982) and <u>Picard</u>, 404 U.S. 270).  It is not sufficient that a "somewhat similar state-law claim was made."  <u>Id.</u> (citing <u>Harless</u>, 459 U.S. at 6).

In <u>Evans v. Court of Common Pleas, Del. County, Pa.</u>, 959 F.2d 1227 (3d Cir. 1992), the Third Circuit noted some of the ways in which petitioners may communicate that they are asserting a federal claim without explicitly referencing specific portions of the federal constitution or statutes.  <u>McCandless</u>, 172 F.3d at 261.  The Court observed that the required message can be conveyed through:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

<u>Id.</u> (citing <u>Evans</u>, 959 F.2d at 1232).

In the instant matter, Burnett did not, by these means or any other, serve fair notice that he was asserting claims of federal constitutional dimension.  <u>McCandless</u>, 172 F.3d at 262.  Burnett's claims in state court made no reference to a constitutional or federal right and cited only state cases considering state law without employing any constitutional analysis.  <u>Id.</u>; <u>see</u> Pet'r Super. Ct. Br. at 15-18, attached to Resp't Ans. as Ex. "B." Furthermore, Burnett's Pennsylvania Superior Court brief does not assert these claims in "terms so particular as to bring to mind" a constitutional right, nor do they "allege a pattern of facts well within the mainstream of constitutional litigation."  <u>Id.</u>; <u>see also</u>, <u>e.g.</u>, <u>Keller v. Larkins</u>, 251 F.3d 408, 414-15 (3d Cir. 2001) (holding that passing references in

state court to the concept of a "fair trial" were insufficient to give the state courts fair

notice that a habeas petitioner was asserting a federal constitutional claim).  Thus, we

conclude that Burnett did not fairly present these claims to Pennsylvania's courts.

McCandless, 172 F.3d at 262-63 (citing Duncan, 513 U.S. at 366).

We find, however, that exhaustion should be excused pursuant to 28 U.S.C. §

2254(b)(1), because a return to state court would be futile due to "an absence of available

State corrective process."  Lines, 208 F.3d at 162.  The only way in which Burnett could

present these claims in the state court at this time is by filing a second PCRA petition.

See Szuchon v. Lehman, 273 F.3d 299, 324 n.14 (3d Cir. 2001).  However, any such

petition would be time-barred by the PCRA's statute of limitations.[1]  As a result,

exhaustion would be futile and is excused.

When a claim is not exhausted because it has not been "fairly presented" to the

_____

[1]Pursuant to the amended PCRA, effective January 16, 1996, collateral actions must be filed within one (1) year of the date the conviction at issue becomes final. 42 Pa. Cons. Stat. Ann. § 9545(b)(1); see also, e.g., Lines, 208 F.3d at 164 n.17 (noting that the Pennsylvania Supreme Court has held that the time restrictions for seeking relief under the PCRA are jurisdictional) (citing Commonwealth v. Banks, 726 A.2d 374 (Pa. 1999)).  For purposes of the PCRA, a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of Pennsylvania and the Supreme Court of the United States, or at the expiration of time for seeking the review.  42 Pa. Cons. Stat. Ann. § 9545(b)(3).  As previously noted, the Pennsylvania Supreme Court denied Burnett's petition for allocatur on February 23, 1998, and Burnett failed to petition for a writ of certiorari in the United States Supreme Court; therefore, his conviction became final on May 24, 1998, when the time for seeking an appeal in the United States Supreme Court expired.  Because Burnett's conviction became final over four (4) years ago, the PCRA statute of limitations would preclude Burnett from presenting the instant claims in a PCRA petition.  42 Pa. Cons. Stat. Ann. § 9545(b)(1).  Moreover, although there are three (3) exceptions to the PCRA's statute of limitations, 42 Pa. Cons. Stat. Ann. § 9545(b)(1)(i), (ii), (iii), Burnett fails to allege any of the limited circumstances upon which an exception would be granted.

state courts, but state procedural rules bar a petitioner from seeking further relief in state courts, the exhaustion requirement is satisfied because there "is an absence of available State corrective process." McCandless, 172 F.3d at 260 (citing 28 U.S.C. § 2254(b)). In such cases, however, petitioners are considered to have procedurally defaulted their claims and federal courts may not consider the merits of such claims unless the petitioner establishes "cause and prejudice" to excuse his default. Id. (citing Coleman, U.S. at 750).

Burnett has not even attempted to provide this court with an explanation for his failure to fairly present these claims to the state courts.[2] As a result, he has not shown cause to excuse his procedural default.[3] Moreover, because Burnett makes no colorable showing of innocence, he has failed to demonstrate that a miscarriage of justice will result if his claims are not reviewed. Coleman, 501 U.S. at 748; Schlup, 513 U.S. at 327 (citing Carrier, 477 U.S. at 496); see Glass, 65 F.3d at 16-17. Therefore, these claims must be dismissed as procedurally defaulted.

---

[2]To the extent that Burnett would argue that his default is due to counsel's failure to properly present these claims on direct appeal, such a claim must fail. A claim of ineffective assistance of counsel constitutes "cause" for procedural default only if the claim was presented to the state courts independently prior to its use to establish cause. Edwards, 529 U.S. 466 (citing Carrier, 477 U.S. at 488-89). In the instant case, the state court never entertained the claim that counsel was ineffective for failing to properly present these claims on direct appeal. Consequently, because a claim of ineffective assistance of appellate counsel was not presented to the state courts, it cannot constitute "cause" for his default.

[3]Because no cause has been demonstrated, the court need not address the prejudice requirement. Engle v. Isaac, 456 U.S. 107, 134 n.43 (1982) (because petitioner lacked cause for default, the court need not consider whether he also suffered actual prejudice).

**B.        Claim Five (5): Failure to Present to State Court**

In his fifth (5th) claim, Burnett argues that trial counsel was ineffective for failing to call or investigate witnesses on Burnett's behalf.  Respondents contend that this claim has never been presented to the state court and that therefore, it is unexhausted.  We agree.  In furtherance thereof, we note that exhaustion should be excused for this claim pursuant to 28 U.S.C. § 2254(b)(1), because a return to state court would be futile due to "an absence of available State corrective process."  Lines, 208 F.3d at 162.  As previously noted, the only way in which Burnett could present this claim in the state court at this time is by filing another PCRA petition.  See Lines, 208 F.2d at 164 & n.17.  Because Burnett is foreclosed from doing so due the PCRA statute of limitations, exhaustion would be futile and is excused.

Nonetheless, we are barred from reviewing this claim on the merits because the claim is procedurally defaulted.  As noted, supra, in all cases in which a state prisoner has defaulted his federal claims in state court, federal habeas review of the claims is barred unless the petitioner can demonstrate cause for the default and actual prejudice resulting therefrom.  Coleman, 501 U.S. at 750; Carrier, 477 U.S. 478.  Burnett has not established that some "objective factor" impeded his ability to present this claim to the state courts; therefore, he has not shown cause to excuse his procedural default.[4]  Carrier, 477 U.S. at

_____

[4]As previously discussed, Burnett is precluded from arguing that his default is due to counsel's failure to present this claim on appeal because a claim of ineffective assistance of counsel constitutes "cause" for procedural default only if the claim was presented to the state courts independently prior to its use to establish cause.  Edwards, 529 U.S. 466 (citing Carrier,

488.  Furthermore, Burnett has failed to demonstrate any evidence of a "actual innocence"
which would allow this court to consider the defaulted claim.  Schlup, 513 U.S. at 327;
see also Glass, 65 F.3d at 16-17.  As a result, federal review of this claim is foreclosed.

### 2.  Claims Addressed on the Merits

Because Burnett presented his first (1st) and fourth (4th) claims to the Pennsylvania
Superior and Supreme Courts on direct review, Respondents concede that Burnett has
exhausted his state court remedies with regard to these claims.  As a result, we will
proceed to review Burnett's first (1st) and fourth (4th) claims on the merits.

### A.    Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") which became
effective on April 24, 1996, amended the standards for reviewing state court judgments in
federal habeas petitions filed under 28 U.S.C. § 2254.  Werts, 228 F.3d at 195.  Since
Burnett filed his habeas petition on June 17, 2002, we are required to apply the amended
standards set forth in the AEDPA to his claims for federal habeas corpus relief.  Id.

---

477 U.S. at 488-89).  Burnett never presented any such claim to the state court; therefore,
ineffective assistance of appellate counsel cannot constitute "cause" for his default.  Moreover,
the Supreme Court has determined that any attorney error that has led to the default of a
petitioner's claims in a collateral or discretionary proceeding in state court cannot constitute
cause to excuse his default in a federal habeas petition.  See Coleman, 501 U.S. at 757 (any
attorney error that led to the default of petitioner's claims in a collateral or discretionary
proceeding in state court cannot constitute cause to excuse his default in federal habeas petition);
see also Pennsylvania v. Finley, 481 U.S. 551, 558 (1987) (Constitution does not dictate standard
for attorney effectiveness in post-conviction collateral attack).

(citing <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997)) (presuming that a federal habeas court is to apply the amended standards set forth in the AEDPA when a petition is filed after the effective date of the AEDPA).

The AEDPA increases the deference federal courts must give to the factual findings and legal determinations of the state courts. <u>Id.</u> at 196 (citing <u>Dickerson v. Vaughn</u>, 90 F.3d 87, 90 (3d Cir. 1996)). Pursuant to 28 U.S.C. § 2254(d), as amended by the AEDPA, a petition for habeas corpus may only be granted if (1) the state court's adjudication of the claim resulted in a decision contrary to, or involved an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of United States;" or if (2) the adjudication resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Factual issues determined by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. <u>Werts</u>, 228 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)).

The Supreme Court expounded upon this language in <u>Williams v. Taylor</u>, 529 U.S. 362 (2000). In <u>Williams</u>, the Court explained that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable

facts." Hameen v. State of Delaware, 212 F.3d 226, 235 (3d Cir. 2000) (citing Williams, 529 U.S. at 389-390).  The Court in Williams further stated that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.  The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. (citing Williams, 529 U.S. at 388-389).  "In further delineating the 'unreasonable application of' component, the Supreme Court stressed that an unreasonable application of federal law is different from an incorrect application of such law and a federal habeas court may not grant relief unless that court determines that a state court's incorrect or erroneous application of clearly established federal law was also unreasonable." Werts, 228 F.3d at 196 (citing Williams, 529 U.S. at 389).

## B.    Claim One (1):  Prosecutorial Misconduct

In his first claim, Burnett alleges that, in closing arguments, the prosecutor improperly called Burnett a liar and commented upon Burnett's failure to call corroborating witnesses.

The Supreme Court has held that federal habeas relief may be granted when the "prosecutorial misconduct may 'so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process.'" Werts, 228 F.3d at 197 (citing Greer v.

Miller, 483 U.S. 756, 765 (1987)) (citation omitted).  The Court further opined that for due process to have been offended, "the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'"  Id. at 197-98 (citing Greer, 483 U.S. at 765) (citations omitted).  See also Ramseur v. Beyer, 983 F.2d 1215, 1239 (3d Cir. 1992) (federal habeas review of a prosecutor's conduct in a state trial is limited to determining whether the prosecutor's conduct "'so infect[ed] the trial with unfairness as to make the resulting conviction a denial of due process'") (quoting Greer, 483 U.S. at 765).  This determination will, at times, require habeas courts to draw a fine line -- distinguishing between ordinary trial error on one hand, and "'that sort of egregious misconduct which amounts to a denial of constitutional due process'" on the other hand.  Id. at 198 (citing Ramseur, 983 F.2d at 1239) (citation omitted).

In evaluating whether the remarks of the prosecutor rise to the level of a constitutional violation, a federal habeas court is required to examine those remarks in the context of the whole trial.  Werts, 228 F.3d at 198 (citing Ramseur, 983 F.2d at 1239 and Greer, 483 U.S. at 766).  The remarks must be sufficiently prejudicial in the context of the entire trial to violate a petitioner's due process rights.  Id. (citing Greer, 483 U.S. at 766 and Donnelly v. DeChristoforo, 416 U.S. 637, 639 (1974)).

In addressing Burnett's assertion that the prosecutor called him a "liar" in closing argument, the state court first noted that:[5]

_____

[5]The disputed portion of the prosecutor's argument states, in relevant part:
You've had an opportunity to see the size of [Burnett].  You,

> [Burnett] has mischaracterized the prosecutor's comment, the
> prosecutor did not call [Burnett] a liar. The prosecutor merely
> stated that [Burnett], in some of his testimony "lied" to the jury
> and that because of that they could disregard his testimony . . .
> This was fair comment based upon [Burnett's] testimony that he
> only remembered chopping his father one [1] time on the head . . .

Commonwealth v. Burnett, No. 622/1995 at 16-17 (Phila. Ct. Comm. Pl., Feb. 19, 1997).

The state court went on to reason that the disputed statements were a "limited portion of a

lengthy and comprehensive argument by the Assistant District Attorney [which] was

reasonably based upon the evidence and fair comment on the evidence as presented by

[Burnett]." Id. at 18. The state court also found that the prosecutor's argument "did not

have the unavoidable effect of prejudicing the jury, forming in their minds a fixed, biased

. . . hostility towards [Burnett] so that they could not weigh the evidence objectively and

render a true verdict." Id. As such, the state court concluded that the prosecutor had not

exceeded the bounds of reasonable advocacy.

Upon review of the relevant caselaw, we find that the state court decision is not

_____

> in fact, know his age and you know his weight. Clearly his father was
> 76 years old . . . I would submit to you as you've heard from the medical
> examiner, wasn't in the best of health, had a heart condition. Do you
> think his father, given that heart condition, was some big bad guy that
> was going to inflict some wicked struggle? I submit to you that defies
> logic and shocked your conscience based on the evidence we presented.
> If you, in fact, will conclude that [Burnett] testified falsely, the judge
> will tell you you can disregard his testimony or believe whatever part
> you believe to be true. I will show you briefly a couple of examples
> where I will submit to you based on his testimony he's, in fact, lied to
> you. He did so, in fact – deliberately and, in fact, he did so deliberately
> and you should disregard his whole testimony.

(N.T. 7/23/96, 57).

contrary to, or an unreasonable application of, Supreme Court precedent. The prosecutor addressed Burnett's credibility through evidence properly presented to the jury through Burnett's testimony. In doing so, the prosecutor highlighted discrepancies between the medical evidence and Burnett's testimony, thereby offering legitimate inferences based upon the evidence presented at trial. As the state court found, the statements at issue were not an improper commentary regarding the prosecutor's personal opinion of Burnett's credibility or a broad characterization of Burnett's whole testimony, but rather an argument made in "fair response" to what the prosecutor viewed as evidence that Burnett had testified falsely. Within the framework of this discussion, we find that the state court reasonably determined that the prosecutor's statements were not improper.

In his second allegation of prosecutorial misconduct, Burnett alleges that the prosecutor improperly commented upon Burnett's failure to call corroborating testimony from other family members regarding the existence of the familiarity of the relationships.[6] Burnett appears to be arguing that the prosecutor allowed the jury to draw the inference that it was Burnett's burden to prove his innocence by calling other witnesses. We agree with the state courts' conclusion that Burnett's interpretation of the prosecutor's statements is "strained and untenable." Commonwealth v. Burnett, No. 2827 Phila. 1996,

---

[6]The prosecutor stated:

> There is no other evidence other than [Burnett's] mouth that suggests that or any family animosity. I submit, because it only came from [Burnett's] mouth, you should totally disregard it based on the evidence that we have presented and the fact as you know them today.

(N.T. 7/23/96, 65-66).

at 2 (Pa. Super. Sept. 16, 1997). Rather than shifting the burden of proof to Burnett, the prosecutor's statements merely commented on the quality of the evidence Burnett had set forth in support of his defense theory, and questioned the credibility of that evidence. Consequently, it cannot be said that the prosecutor's comments were improper or that they rendered Burnett's trial fundamentally unfair.

Overall, considering the challenged remarks in trial context, this court does not find that the prosecutor's statements "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly, 416 U.S. at 643. In light thereof, we conclude that the state court's determination of this issue was neither contrary to nor an unreasonable application of the prevailing law. See 28 U.S.C. § 2254(d).

### C.    Claim Four (4): Violation of Fifth Amendment Based on Involuntary Confession

In his fourth (4th) claim, Burnett argues that he did not knowingly, intelligently and voluntarily waive his Miranda rights because he was in a hospital emergency ward being treated for cuts on his hands when he gave the statement to police.[7]

The voluntariness of a confession is a mixed question of fact and law. Although the "ultimate issue of 'voluntariness' is a legal question requiring independent federal

---

[7]This is a reference to Miranda v. Arizona, 384 U.S. 436 (1966), in which the Supreme Court held that certain warnings must be given before a suspect's statement made during custodial interrogation could be admitted in evidence. In Miranda, the Supreme Court noted that the advent of modern custodial police interrogation brought with it an increased concern about confessions obtained by coercion because "custodial interrogation exacts a heavy toll on individual liberty and trades on the weakness of individuals." 384 U.S. at 445-458.

determination," the state courts' resolution of subsidiary factual issues are entitled to a

presumption of correctness.  Miller v. Fenton, 474 U.S. 104, 112 (1985).  A reviewing

court must evaluate the totality of the circumstances to determine whether a confession

was voluntary.  Arizona v. Fulminante, 499 U.S. 279, 285 (1991).

The state court summarized the relevant facts related to consideration of Burnett's

motion to suppress as follows:

> Testimony indicated that Detective Manuel Santiago, of the
> Homicide Division of the Philadelphia Police Department,
> interviewed [Burnett] from 3:20 p.m. to 3:45 p.m., shortly after the
> murder occurred, at Einstein Hospital's Emergency Room.  [Burnett]
> was in the hospital receiving stitches for the injuries to his hands.
> These injuries were sustained during [Burnett's] attack on his father
> when [Burnett's] hands slipped down the blade of the knife.
>
> Upon the Detective's initial encounter with [Burnett] in the
> Emergency Room, [Burnett] indicated that he was willing to speak
> with the detective.  The Detective was then told by hospital
> personnel that he would have to wait for the doctor's permission to
> speak to [Burnett].  At that time Detective Santiago noticed [Burnett]
> did have injuries to his hands, but had no other injuries of any kind.
> [Burnett] was not taking medication and he was not hooked up to an
> IV device.  [Burnett] appeared to be alert and free from pain.  At
> about 3:20 p.m., doctors gave Detective Santiago permission to
> interview [Burnett].  [Burnett] was interviewed by the Detective with
> the doctor's permission, when the doctors were stitching his injured
> hands.
>
> Detective Santiago testified that after telling [Burnett] that he was
> under arrest and being charged with the death of his father, Alistar
> Burnett, he warned [Burnett] of his Miranda rights from the first side
> of the Philadelphia Police Department's standard police interrogation
> card.  After being warned of his Miranda rights which were in
> accordance with the law, [Burnett] proceeded to waive his rights and
> indicated that he wished to make a statement.  During the course of

the statement [Burnett] did not ask to stop or discontinue the statement, and he was responsive to the questions presented to him. The statement itself was a five [5] page statement which [Burnett] was unable to sign because of the injuries to his hands. Detective Santiago hand wrote the statement while standing at the bed next to [Burnett] and went through every page with him, reading it back to him to let [Burnett] know that his statement had been accurately recorded.

[Burnett] testified [at the suppression hearing] that his mind was free and clear when he answered Detective Santiago's questions and that he was not forced or coerced into giving the statement.

Commonwealth v. Burnett, No. 622/1995 at 4-7 (Phila. Ct. Comm. Pl., Feb. 19, 1997)

(citations to Record omitted).

In his Superior Court brief, Burnett argued that he was unaware that he had been given Miranda warnings by Detective Santiago because, at the time, he was receiving medical treatment for wounds to his hands which treatment affected his ability to perceive what was occurring. See Pet'r Super. Ct. Br. at 21, attached to Resp't Ans. as Ex. "B."

The Supreme Court set forth a two- (2-) part test for determining the voluntariness of a waiver:

First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

Moran v. Burbine, 475 U.S. 412, 421 (1986).

In assessing the first prong of our inquiry, we note that the voluntariness of Burnett's waiver is not at issue. Indeed, Burnett has not even attempted to refute the state court's findings that "[b]y his own admission [Burnett] was not forced or coerced into giving the written statement at the hospital" and "there [was] absolutely no evidence of police coercion." Commonwealth v. Burnett, No. 622/1995 at 8 (Phila. Ct. Comm. Pl., Feb. 19, 1997). Consequently, we conclude that Burnett's waiver was not the product of police coercion. See Moran, 475 U.S. at 421.

The second prong of the voluntary waiver inquiry warrants an examination of Burnett's mental state at the time of the waiver. Reinert v. Larkin, 211 F.Supp.2d 589, 602 (E.D. Pa. 2002). In reviewing this claim, the state court noted that Burnett was interviewed with his physician's approval and that Burnett had testified at the suppression hearing that his mind had been free and clear when he answered police questions. Commonwealth v. Burnett, No. 622/1995 at 7-8 (Phila. Ct. Comm. Pl., Feb. 19, 1997). The court also found that Burnett was aware of the subject matter of the interrogation; that he was awake, alert and responsive to questioning; and that he was not under the influence of drugs or alcohol which would have impaired his ability to understand and communicate. Id. at 8. Upon consideration of these factors, the court concluded that Burnett knowingly, intelligently and voluntarily chose to give a statement to the police. Id. at 9.

We find that a reasonable fact-finder could have chosen to credit Detective

Santiago's testimony regarding Burnett's waiver of his <u>Miranda</u> rights.  28 U.S.C. §

2254(d)(2).  Moreover, despite Burnett's bald assertions to the contrary, the record

indicates that Burnett was fully cognizant and capable of understanding the inculpatory

statements at the time they were made.  <u>See</u> <u>Myrie v. Hundley</u>, 1994 WL 21960, at *3

(D.N.J. Jan. 18, 1994).  As such, we find that the state court determination that Burnett

voluntarily waived his Fifth Amendment rights was not an unreasonable application of

<u>Miranda</u>.  <u>See</u> 28 U.S.C. § 2254(d)(1).  Consequently, habeas relief is not merited on this

claim.

Therefore, I make the following:

# R E C O M M E N D A T I O N

AND NOW, this      day of February, 2003, IT IS RESPECTFULLY

RECOMMENDED that the petition for a writ of habeas corpus filed pursuant to 28

U.S.C. § 2254 be DENIED.  There has been <u>no</u> substantial showing of the denial of a

constitutional right requiring the issuance of a certificate of appealability.

_____

PETER B. SCUDERI
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KENNETH BURNETT            :        CIVIL ACTION
                           :
          v.               :
                           :
DONALD T. VAUGHN, et al.   :        No. 02-3823

**O R D E R**

AND NOW, this        day of                    , upon careful and

independent consideration of the petition for a writ of habeas corpus filed pursuant to 28

U.S.C. § 2254, and after review of the Report and Recommendation of United States

Magistrate Judge Peter B. Scuderi, and any objections made thereto, IT IS ORDERED

that:

1. The Report and Recommendation is APPROVED and ADOPTED.

2. The petition filed pursuant to 28 U.S.C. § 2254 is DENIED.

3. There is <u>no</u> basis for the issuance of a certificate of appealability.

BY THE COURT:

_____
WILLIAM H. YOHN, Jr., J.